IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LIVE NATION MOTOR SPORTS, INC.** | § | |
| **f/k/a SFX MOTOR SPORTS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-276-L** |
| | § | |
| **ROBERT DAVIS, d/b/a** | § | |
| **TRIPLECLAMPS and** | § | |
| **www.supercrosslive.com,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are several pending motions, including: Plaintiff's Motion for Preliminary Injunction ("Plaintiff's Mot. for Prelim. Inj."), filed June 23, 2006; Defendants and Counter Claimant's Motion to Quash Plaintiff's Motion for Partial Summary Judgment and to Quash Plaintiff's Motion for Preliminary Injunction and to Quash Plaintiff's Proposed Findings of Fact and Conclusions of Law in Support of Motion for Preliminary Injunction ("Mot. to Quash")[1], filed July 12, 2006; Defendants [sic] and Counter Claimant's Motion for Preliminary Injunction ("Defendant's Mot. for Prelim. Inj."), filed August 2, 2006; and Plaintiff's First Supplement to Plaintiff's Motion for Preliminary Injunction ("Plaintiff's Suppl. Mot. for Prelim. Inj."), filed October 24, 2006. After careful consideration of the motions, related briefs and applicable law, the court **grants** Plaintiff's Motion for Preliminary Injunction; **denies in part** Defendant's Motion to Quash; **denies** Defendant

---

[1]Defendant Robert Davis is a *pro se* litigant. He did not file responses to Plaintiff's Mot. for Prelim. Inj. or Plaintiff's Motion for Partial Summary Judgment; however, he did file his Mot. to Quash within the deadline permitted for responses to both of those motions. The court, therefore, treats Davis's Mot. to Quash and the arguments contained therein as his response, as well as a motion seeking affirmative relief.

**Memorandum Opinion and Order – Page 1**

and Counter Claimant's Motion for Preliminary Injunction; and **denies as moot** Plaintiff's First Supplement to Plaintiff's Motion for Preliminary Injunction.

## I. BACKGROUND

This is a trademark, copyright and unfair competition action filed by Plaintiff SFX Motor Sports, Inc. ("SFX")[2], on Feb. 13, 2006, against Defendant Robert Davis, d/b/a TripleClamps and www.supercrosslive.com ("Davis"). Davis filed counterclaims against SFX alleging trademark infringement on March 6, 2006. SFX promotes and produces motorcycle racing events known as Supercross. The racing events take place at various venues across the country in a "season" running from December through the following May and are broadcast live via the radio, television and internet (referred to as "audio webcasts"). SFX contends that Davis performs and displays audio webcasts of the racing events through his website, www.supercross.com, in violation of SFX's copyright in and to the audio webcasts. Specifically, SFX asserts that Davis "streams" the live webcast of the races on his website in "real time," which causes SFX irreparable harm by limiting its right to sell sponsorships or advertisement on its own website as the "exclusive source" of the webcasts. Plaintiff's Mot. for Prelim. Inj. at 5-6. Davis admits to providing an audio webcast "link" to the racing events on his website, and asserts an affirmative defense. Mot. to Quash at 1. Davis's Motion for Preliminary Injunction seeks to prohibit SFX from using the name "SupercrossLIVE," which Davis contends has been registered under the Trademark Act by his company, TripleClamps. SFX responds that Davis has presented no evidence that SFX has ever used "SupercrossLIVE" as

---

[2]Plaintiff filed a notice with the court on November 6, 2006, that it had changed its name from SFX Motor Sports, Inc. to Live Nation Motor Sports, Inc. Since all of the motions, responses and accompanying briefs addressed by this motion were filed prior to the name change, this order will refer to Plaintiff as "SFX" for consistency and clarity.

its own trademark, that Davis did not attempt to register "SupercrossLIVE" until after SFX sued him in the instant case, and that the Trademark Office has not granted Davis a trademark registration.

## II.  LEGAL STANDARD

### A.  Preliminary Injunction

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction.  To prevail, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (3) that greater injury will result from denying the temporary restraining order than from its being granted; and (4) that a temporary restraining order will not disserve the public interest.   *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).  The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted.  *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618 (5th Cir. 1985); *Clark*, 812 F.2d at 993.  Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### B.  Copyright Protection

To qualify for a preliminary injunction in a copyright action, the plaintiff must show a substantial likelihood of success on the merits of its copyright claim.  *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991)  Under the United States Copyright Act, copyright protection may extend to "original works of authorship fixed in any tangible medium of expression," including audiovisual works and sound recordings.  17 U.S.C. § 102.  The owner of a copyright has the

exclusive rights to perform and display the copyrighted work publicly, including the right to "perform . . . by means of a digital audio transmission." 17 U.S.C. §§ 106(4), (5), (6).  A copyright registration is not a prerequisite to protection of live performances or broadcasts.  *See* 17 U.S.C. § 411(b).[3]  In short, to prevail in a copyright action, the plaintiff must "show 'ownership' of the material and 'copying' by the defendant.  To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that he has complied with statutory formalities." *Lakedreams*, 932 F.2d at 1107-08 (internal citations omitted).

### C.  Trademark Infringement

To qualify for a preliminary injunction in a trademark infringement action, the plaintiff must show a substantial likelihood of success on the merits of its infringement claim.  *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000).  To prevail on a trademark infringement claim, the plaintiff must show "(1) that the mark or trade dress, as the case may be, qualifies for protection and (2) that [defendant's] use of the mark or trade dress creates a likelihood of confusion in the minds of potential consumers."  *Pebble Beach Co. v. Tour 18 Ltd.*, 155 F.3d 526 at 536 (5th Cir. 1998).  To be a valid trademark that can be federally registered, "a mark must be capable of distinguishing the applicant's goods from those of others," or "distinctive."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2000) (abrogated on other grounds by *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001)).  A registered trademark "shall be *prima facie*

---

[3]The Copyright Act specifically states that:
In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute and action for infringement . . . if . . .the copyright owner–(1) serves notice upon the infringer not less than 48 hours before such fixation . . . and (2) makes registration for the work . . . within three months after its first transmission.
17 U.S.C. § 411(b).

evidence of the validity" of the registered owner's exclusive right to use the mark in commerce.  17

U.S.C. § 1115.

## III.  ANALYSIS

### A.  SFX's Motion for Preliminary Injunction

### 1.  Substantial likelihood of succeeding on the merits

The court finds that SFX has shown a substantial likelihood of succeeding on the merits of

its copyright claim against Davis because SFX has shown ownership of the material and "copying"

by Davis.  The live broadcasts of the racing events, either via television, radio or internet webcasts,

constitute original audiovisual material that can be copyrighted under the Copyright Act.  *See* 17

U.S.C. § 102; *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 at 847 (2d Cir. 1997)

(*citing* H.R. Rep. No. 94-1476 at 52 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659 at 5665) (noting

Congress's reasons for amending the Copyright Act to include protections for live brodcasts).  SFX,

as the producer of the racing shows, qualifies as the author or "owner" of the copyrightable material.

That SFX does not currently hold copyright registrations for the shows that have yet to take place

will not preclude it from obtaining protections afforded to copyright owners under the copyright act,

so long as it complies with the statutory formalities within a prescribed time.  *See* 17 U.S.C. §

411(b).  Specifically, SFX must give advance notice of its copyright interest in the broadcast

material, prior to the broadcasts, and apply for a copyright registration for each show within three

months of the transmission date.  *See id.*  Through affidavits and other evidence attached to its Mot.

for Prelim. Inj., SFX has shown that, during the last racing season, it complied with the statutory

formalities within the prescribed time for at least ten of the shows it produced between December

2005 and March 2006.  SFX also states, and Davis does not appear to deny, that Davis's website,

www.supercrosslive.com, provided live audio webcasts of those shows. Davis's response to SFX's allegations are unclear, because he denies streaming, copying or re-broadcasting SFX's shows; however, Davis asserts that he has an "affirmative defense" to SFX's complaint because he provides "the same audio webcast link freely distributed by ClearChannel executives and thousands of individuals upon thousands of websites worldwide."[4]  Mot. to Quash. at 1.  Additionally, Davis asserts "fair use" as an affirmative defense.  *See* Answer at 5, 6 (*citing* 17 U.S.C. § 107 and 15 U.S.C. § 1125(c)(4)(C)).

Litigation over copyright protections for live internet webcasts have not made their way into controlling Fifth Circuit opinions (nor any other circuit court opinions that this court could find).  Opinions addressing copyright protection for live television broadcasts, however, provide appropriate, analagous guidance in this case.  In *National Football League v. PrimeTime 24 Joint Venture*, the Second Circuit upheld a permanent injunction against Defendant PrimeTime, which provided unauthorized satellite transmissions of the NFL's copyrighted weekly live broadcasts of football games to viewers in Canada.  211 F.3d 10 (2[d] Cir. 2000).  PrimeTime had argued that "capturing or uplinking copyrighted material and transmitting it to a satellite does not constitute a

---

[4]The court notes that Davis contradicts himself through his filings.  In his Mot. to Quash, he states that "Defendants FLATLY DENY that they have ever had any involvement with a 'Process Known As Streaming'."  Mot. to Quash at 2.  Davis, however, also states in his Answer and Counterclaim that:

> TripleClamps, in business since Feb 2001, formed from within the heartland of 100's thousands of Motorcross Racing Community at the grassroot level, provides leading edge streaming technologies to millions of live audiences around the world for many of USA's and Europe's Major Amateur and Pro Events in Motorcross, Arenacross, Supercross, Off-Road, ATV, Hare-Scramble, Cross Country, Trials, and many other countless two wheeled and four wheeled vehicles.

Answer to Compl. Den. Allegation of Trademark Infringement With Countercls. (Mar. 6, 2006) ("Answer") at 6.

public display or performance of that material." *Id.* at 12.  The court rejected that argument by reviewing similar copyright infringement actions, as well as legislative history, and stated:

> We believe the most logical interpretation of the Copyright Act is to hold that a public performance or display includes each step in the process by which a protected work wends its way to its audience.  Under that analysis, it is clear that PrimeTime's uplink transmission of signals captured in the United States is a step in the process by which NFL's protected work wends its way to a public audience.  In short, PrimeTime publicly displayed or performed material in which the NFL owns the copyright.  Because PrimeTime did not have authorization to make such public performance, PrimeTime infringed the NFL's copyright.

*Id.* (internal citations omitted).  The court believes Davis has tried to make a similar argument as PrimeTime by stating that he has an "affirmative defense" because he provides the "same audio webcast link freely distributed by ClearChannel."  Similarly, the court finds that the unauthorized "link" to the live webcasts that Davis provides on his website would likely qualify as a copied display or performance of SFX's copyrightable material.

The court also finds that the link Davis provides on his website is not a "fair use" of copyright material as Davis asserts through his Answer.  The Copyright Acts states that reproductions of a copyrighted work is protected as a "fair use" of the material if used for purposes of "criticism, comment, news reporting, teaching . . . scholarship or research."  17 U.S.C. § 107.  Additionally, to determine whether a reproduction qualifies as a fair use of the material, the court must consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* Davis has not provided any evidence that his "use" of SFX's audio webcasts falls within any of these categories. He does use the word "commentary" in his "Seventh Affirmative Defense," where he asserts that "[t]his is a malicious attempt by the Plaintiff to stifle competition and commentary from non-Plaintiff Internet websites and to clear the commercial landscape of potential competitors of Plaintiffs." Davis's Answer at 5. In light of Davis's statements regarding commercial competition, the court does not believe Davis's "use" of SFX's audio webcasts qualifies as fair use for the purpose of criticism, comment or news reporting. Davis has given no indication that he excerpts portions of the webcasts on his website for these purposes. Rather, he admits providing a link to the webcast that "is the same audio webcast" provided by SFX. Mot. to Quash at 1. Accordingly, the court finds that SFX is likely to succeed on the merits of its copyright infringement claim against Davis, because Davis has copied SFX's copyrighted webcasts without authorization, and not for the purposes protected by the "fair use" provision of the Copyright Act.

**2. Substantial threat of immediate and irreparable harm**

SFX will likely suffer immediate and irreparable harm when the new racing season begins in mid-December 2006 if Davis is not enjoined from posting links to the live racing webcasts. SFX has provided evidence that it first notified Davis in January 2006 that his live webcasts links violated SFX's copyrights; yet Davis continued to provide the webcast links through his website on at least ten subsequent occasions. Davis's responses to SFX's Mot. for Prelim. Inj., also lead the court to believe that he will continue to provide unauthorized webcast links through his website once the new racing season begins, since he asserts an affirmative defense to his conduct.[5] The court agrees that

---

[5]Additionally, the court notes that Davis's statements are generally defiant and full of inappropriate hyperbole that do not assist the court in determining the facts. Here are a few examples from Davis's Mot. to Quash: "Defendants DO NOT ACCEPT these "Supercross LIVE!" copyright labeling by Plaintiff." "Plaintiffs have come roaring into this federal court with the overwhelming force and the ethics, or lack

if Davis is not enjoined from providing unauthorized webcast links on his website, SFX will lose its ability to sell sponsorships or advertisement on the basis that it is the exclusive source of the webcasts, and such loss will cause irreparable harm.

### 3. The greater injury

The court finds that greater injury will result from denying SFX the preliminary injunction than from one being granted.  As stated above, SFX will suffer irreparable harm through a diminished ability to market its copyright material  if an injunction is not issued.  On the other hand, Davis may suffer some level of commercial loss if he is enjoined from providing live webcasts of one of the multiple racing events he markets through TripleClamps.  Since the court has explained the reasons SFX will likely succeed on the merits of its copyright claim against Davis, the court does not believe that Davis is entitled to any commercial gain by providing SFX's webcasts links. Additionally, Davis asserts that his website "is a free portal service for Supercross Enthusiast Internet Fans Worldwide," and that TripleClamps provides "leading edge streaming technologies for "many other countless two wheeled and four wheeled vehicles."  Answer at 6.  Even if the court enjoins Davis from providing live webcasts of SFX's racing events, he may continue to provide a website for racing enthusiasts and authorized links to other racing events.  Thus, the injury, if any, to Davis is outweighed by the injury to SFX.

---

thereof, of Ghengis Khan."  "Plaintiff has the gaul [sic] to ask this court to affirm its spoils with a partial summary judgment and preliminary judgment."  "A lie repeated five (5) times becomes the truth.  Ten (10) times is this Plaintiff's version of the truth in this complaint."

**Memorandum Opinion and Order – Page 9**

**4. The public interest**

A preliminary injunction in this case will not disserve the public interest.  Davis has not asserted, and the court has no reason to believe, that racing fans will lose access to live webcasts of SFX's Supercross events if he is enjoined from providing the link on his website.  The public expects laws passed by Congress to be enforced.  The court believes it serves the public interest to enforce the Copyright Act, which, in this case, necessitates a preliminary injunction to prevent Davis from providing unauthorized links to SFX's audio webcasts.

## B.  Davis's Motion for Preliminary Injunction

Davis is not entitled to a preliminary injunction against SFX, because he has not shown that he has a substantial likelihood of succeeding on the merits of his counterclaim for trademark infringement.  Davis has presented no evidence that "SupercrossLIVE" is distinctive, and he has not given this court evidence showing that he obtained trademark registration for "SupercrossLIVE."[6] Without any evidence that he is likely to succeed on the merits of his claim, this court must **deny** Davis's Motion for Preliminary Injunction.

## IV.  CONCLUSION

For the reasons stated herein, the court hereby **grants** Plaintiff's  Motion for Preliminary Injunction; **denies in part** Defendant's Motion to Quash; **denies** Defendant and Counter Claimant's Motion for Preliminary Injunction and **denies as moot** Plaintiff's First Supplement to Plaintiff's Motion for Preliminary Injunction.

## V.  PRELIMINARY INJUNCTION

---

[6]Davis has attached printouts showing that he filed for trademark registration on Feb. 21, 2006, a week after SFX instituted this lawsuit; however, his application has not been approved.  The status report he provides states that his application is "[n]ewly filed," and "not yet assigned to an examining attorney."

**Memorandum Opinion and Order – Page 11**

Defendant Davis, his company TripleClamps, any officers, agents, servants, employees, representatives of Davis or TripleClamps, and all others acting in participation or concert with them, are hereby **preliminarily enjoined** and **restrained** from providing internet links to SFX's audio webcasts of its racing events, or otherwise displaying or performing SFX's audio webcasts.

In accordance with Fed. R. Civ. P. 65(c), the court hereby **sets a bond** in the amount of **$2,500**, and this preliminary injunction shall not become effective until Plaintiff SFX tenders to the court the sum of **$2,500** cash, or bond in a form approved by the clerk of court.

This preliminary injunction **shall remain in effect** until a trial is conducted on the merits, or until it is otherwise modified by the court.  This injunction is **issued** at 6:45 p.m. on December 11, 2006.

**It is so ordered** this 11th day of December, 2006.

Sam A. Lindsay
United States District Judge